IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

MARCUS W. HOLTON,
Plaintiff,
vs.

CASE NO.: 4:07 cv 91 SPM/WCS

CIVIL DIVISION

ALL AMERICAN FORD a/k/a
TALLAHASSEE AUTO INVESTORS I, L.L.C.
Defendant,
_______________________________________/

FILED 07 MAR -5 PM 4:43 OFFICE OF CLERK U.S. DISTRICT CT. NORTHERN DIST. FLA.

COMPLAINT

The Plaintiff, MARCUS W. HOLTON, by and through his undersigned attorney, sues the Defendant, ALL AMERICAN FORD a/k/a TALLAHASEE AUTO INVESTORS I, L.L.C. and says:

General Allegations

Jurisdiction

1.) This is an action for declaratory relief, injunctive relief, and monetary damages brought pursuant to the Regulation Z of the Federal Truth in Lending Act, 15 USC §1638, and 12 C.F.R. § 226.18, Equal Credit Opportunity Act, 15 U.S.C. §§ 1691 – 1691f, along with monetary damages associated with Florida State law claims and common law causes of action.

2.) The Plaintiff is a natural person residing in Tallahassee, Leon County, Florida.

3.) The Defendant is a Florida Corporation conducting an on-going course of business as retail automobile dealership under the fictitious name of "ALL AMERICAN FORD" located in Tallahassee, Leon County, Florida.

4.) All acts and omissions giving rise to this claim are alleged to have occurred in Leon County, Florida.

Factual Allegations

5.) On or about July 21, 2006, the Plaintiff visited the business place of the Defendant for the purpose of the selecting and purchasing an automobile.

RECEIVED 07 MAR -7 AM 10:02 OFFICE OF CLERK U.S. DISTRICT CT. NORTHERN DIST. FLA.

6.) On or about July 21, 2006, the Plaintiff negotiated and agreed to purchase a 2006 Ford Expedition VIN # 1FMPU15596LA16083 from the Defendant (hereafter referred to as the "vehicle").

7.) The Defendant, acting through its employees, drafted a Purchase agreement (Exhibit A) which was presented to and signed by the Plaintiff.

8.) The Defendant agreed to arrange financing for the Plaintiff's purchase of the vehicle.

9.) The Plaintiff provided a trade in vehicle (Hereafter referred to as the "trade-in"), a 1999 Ford Expedition VIN # 1FMRU1768XLB38093, for which he was to receive $1,000 credit towards to the purchase of the vehicle.

10.) The Defendant informed the Plaintiff that financing had been arranged through Ford Motor Credit and presented him with a Retail Installment Contract (Exhibit B), hereafter referred to as "RISC," which he executed.

11.) The Defendant took possession of the trade-in, which it later sold to a third party.

12.) On or about July 22, 2006, the Plaintiff returned to the Defendant's automobile dealership and gave notice of his desire to cancel the transaction and retrieve his trade-in vehicle based upon his wife's distaste for the new vehicle. The Defendant, acting through its employees, informed the Plaintiff that it was impossible to cancel the transaction due to it having been sold to the finance company.

13.) On or about July 22, 2006, the Plaintiff contacted Ford Motor Credit and was informed that no financing was in place. The Plaintiff contacted the Defendant by telephone and was assured by employees of the Defendant that Financing was in place, that he need not be concerned, and that the transaction was finalized such that it could not be cancelled.

14.) Several weeks after taking possession of the vehicle, employees of the Defendant contacted the Plaintiff and asked him for personal references. The Plaintiff made an inquiry as to whether there was a credit contract in place and whether he could simply return the vehicle and retrieve his trade-in vehicle. Employees of the Defendant informed the Plaintiff that all aspects of the purchase were complete, and that financing had been arranged.

15.) In December 2006, the Plaintiff contacted the Defendant and spoke with its employee Robert Parrymore and again inquired as to the status of the financing and was assured by the Defendant that there was no problem and that he had been approved for financing.

The Plaintiff notified the Defendant that he was unable to get a permanent tag for the vehicle due to the Defendant's failure to transfer title to the Plaintiff and the Defendant gave him a temporary tag.

16.) On or about February 5, 2007, the Defendant informed the Plaintiff that the financing had not been arranged and that if the Plaintiff did not provide a co-signor the Defendant would seek the repossess the vehicle. The Defendant further informed the Plaintiff that his trade-in had been sold.

17.) On or about February 8, 2007, the Plaintiff received a telephone call from an individual hired by the Defendant who was seeking to repossess the vehicle from the Plaintiff.

18.) Plaintiff has hired the undersigned attorney to represent him in this matter and is obligated to pay him a reasonable fee.

First Claim

Violation of Truth-in-Lending Act and Regulation Z

19.) Plaintiff incorporates by reference paragraphs 1 to 18.

20.) 15 USC §1638 and 12 C.F.R. § 226.18 govern the disclosures made by a creditor to a borrower in a closed-end credit transaction.

21.) RISC is a closed-end credit contract.

22.) The disclosure of terms required by 15 U.S.C. § 1638 and 12 C.F.R. § 226.18 must occur prior to consummation of the transaction (see 12 C.F.R. § 17(b)).

23.) Consummation of RISC occurred at the moment the Plaintiff's signed the documents.

24.) Defendant Violated the Truth in Lending Act by improperly starting to charge interest on the amount financed before actually providing the amount financed to Plaintiffs, and the creditor disclosed the annual percentage rate as lower than the true annual percentage rate.

25.) The Defendant violated the Truth in Lending Act and Regulation Z by failing to properly deliver all "material" disclosures as required by the Truth in Lending Act and Regulation Z, including the following

a. by failing to disclose accurately the "finance charge," in violation of 15 U.S.C. § 1638(a)(3), and Regulation Z, 12 C.F.R. § 226.18(d) and 226.4;

b. by failing to disclose accurately the "amount financed" in violation of 15 U.S.C. § 1638(a)(2) and Regulation Z, 12 C.F.R. § 226.18(b); and

c. by failing to disclose accurately the "annual percentage rate," in violation of 15 U.S.C. § 1638(a)(4) and Regulation Z, 12 C.F.R. § 226.18(e).

26.) The Defendant further violated this Act because it treated the disclosures on the Credit Contract as estimates about the terms of the credit that it might provide Plaintiffs, and pursuant to Regulation Z § 226.17(c)(2), the disclosures should have been marked as estimates.

Second Cause of Action

Conversion

27.) Plaintiff incorporates by reference paragraphs 1 to 18.

28.) Defendant acquired possession of the Plaintiff's trade-in by representing that the Defendant had purchased the vehicle and that financing was in place.

29.) When Defendant acquired possession of the Plaintiff's trade-in, it did not consider the deal consummated or final such that the Defendant had a right of possession to the trade in.

30.) When Defendant sold the Plaintiff's trade-in, it did not consider the deal consummated for final such that the Defendant had a right of ownership allowing it to sell the Defendant's trade-in to a third party.

31.) Plaintiff was deprived of possession of his trade-in, which has not been returned to the Plaintiff.

32.) Plaintiff continues to be denied possession of the vehicle.

Third Cause of Action

Fraud

33.) Plaintiff incorporates by reference paragraphs 1 to 18.

34.) The Defendant intentionally misrepresented to the Plaintiff that title of the vehicle was being transferred to him.

35.) The Defendant intentionally misrepresented to the Plaintiff that his title interest in the vehicle would be processed by the Department of Motor Vehicles for the disclosed fee of $252.00.

36.) The Defendant intentionally misrepresented to the Plaintiff that financing of the vehicle was approved.

37.) The Defendant made each of these misrepresentations, or caused each of these representations to be made, so that the Plaintiff would sign the Purchase Agreement and credit contracts (RISC) and become obligated to pay the amounts shown on those contracts, and transfer possession of his trade-in.

38.) In reliance on the misrepresentations, the Plaintiff signed the Purchase Agreement, RISC and became obligated to pay those amounts, transferred possession of his trade-in, lost possession and ownership of his trade-in, and suffered humiliation and embarrassment when those representations turned out to be false.

## Forth Cause of Action

## Breach of Express Warranties

39.) Plaintiff incorporates by reference paragraphs 1 to 18.

40.) The Defendant made an express verbal warranty to the Plaintiff that credit had been approved.

41.) An express warranty of title was also a part of the transaction between the Plaintiff and Defendant.

42.) Both of these express warranties were breached when the Plaintiff failed to receive the benefit of approved credit and when he never received title for the vehicle in his name.

## Fifth Case of Action

## Violation of Florida's Motor Vehicle Retail Sales Finance Act

43.) Plaintiff incorporates by reference paragraphs 1 to 18.

44.) Defendant is a "Motor vehicle retail installment seller" as defined in section 520.02(15) Florida Statutes.

45.) Defendant is licensed as a "Motor vehicle retail installment seller" pursuant to section 520.03 Florida Statutes.

46.) Plaintiff is a "retail buyer" as defined in section 520.02(13) Florida Statutes.

47.) RISC is a "retail installment contract" as defined in section 520.02(14) Florida Statutes.

48.) The sale of the vehicle by the Defendant to the Plaintiff is a "retail installment transaction" as defined by section 520.02(16) Florida Statutes.

49.) The Defendant willfully violated section 520.07(1)(a) Florida Statutes by failing to provide for the sellers signature on the contract (RISC) and by failing to ensure that all essential provisions of the agreement were completed prior to the buyer signing the contract (due to the seller later canceling the agreements and asserting that financing according to the terms contained within RISC were conditional in nature.)

50.) Defendant willfully violated sections 520.13 Florida Statutes and 520.995(1)(c) Florida Statutes by obtaining the Plaintiff's signature on a forms (Exhibit C) which purport to waive and circumvent the defendant's obligations and to waive the Plaintiff's rights under the Motor Vehicle Retail Sales Finance Act. These forms purport to extend contract consummation to the date of contract assignment in violation of TILA and eliminate any contract obligation on the part of the Defendant.

## Sixth Cause of Action

## Breach of Contract

51.) Plaintiff incorporates by reference paragraphs 1 to18.

52.) The parties negotiated and executed a contract for the sale and financing of the vehicle.

53.) Plaintiff provided consideration in the form of his commitment to pay the payments and their trade-in.

54.) Plaintiff performed according to the terms of the contract.

55.) Defendant breached that contract by failing to provide the agreed upon financing.

56.) Defendant breached that contract by failing to pay the agreed upon consideration for the Plaintiff's trade-in vehicle.

57.) Plaintiff was harmed as a result of the Defendants breach by loss of the promised financing and loss of the trade-in.

58.) The harms suffered by the Plaintiff were a foreseeable consequence of the Defendant's breach.

Seventh Cause of Action

Misrepresentation

59.) Plaintiff incorporates by reference paragraphs 1 to18.

60.) The Defendant, acting through its employees, represented to the Plaintiff that financing had been arranged for the vehicle and that the sale of the vehicle could not be cancelled due to the approval of the financing.

61.) The representations that financing was approved and that the sale could not be cancelled made by the Defendant's employees were false and were known by the Defendant's employees to be false at the time they were made.

62.) The Plaintiff relied upon those statements in keeping the vehicle and not retrieving his trade-in from the vehicle.

63.) The Plaintiff was harmed as a result of his reliance upon the statements of the Defendant's employees in the form of a loss of his trade-in vehicle, damage to his credit rating, embarrassment, and loss of the promised financing.

Eighth Claim

Violation of Equal Credit Opportunity Act

64.) The Plaintiff incorporates by reference paragraphs 1 to 18.

65.) The extension of credit by the Defendant to the Plaintiff giving rise to this action is governed by the Equal Credit Opportunity Act contained within 15 U.S.C. §§ 1691 – 1691f.

66.) The Defendant is a creditor as defined in 15 U.S.C. §1691a(e).

67.) The Plaintiff is an applicant as defined in 15 U.S.C. §1691a(b).

68.) The Defendant violated 15 U.S.C. §1691(d)(1) by failing to accurately inform the Plaintiff of its action on his credit application within 30 days after receipt of his credit application.

69.) The Defendant violated 15 U.S.C. §1691(d)(2) by failing to provide the Plaintiff with a statement in writing as to the reason why his credit application was denied and by failing to provide the Plaintiff with a statement containing the specific reasons why the adverse action was taken on his application.

70.) The Plaintiff was harmed as a result of the Defendants violations of the Equal Credit Opportunity Act. The harm suffered by the Plaintiff includes, but is not limited to, loss of his trade-in, damage to his credit rating, loss of financing opportunities, and embarrassment.

71.) The Plaintiff is entitled to actual damages and punitive damages for the Defendants violations pursuant to 15 U.S.C. §1691e(1)(a) and 15 U.S.C. §1691e(1)(b).

72.) The Court has the authority to enjoin the Defendant from future violations pursuant to 15 U.S.C. §1691e(1)(c).

73.) The Plaintiff is entitled to recover his costs and attorney fees pursuant to 15 U.S.C. §1691e(1)(d).

<u>Prayer for Relief</u>

Plaintiff respectfully requests that the Court grant the following relief:

1.) Assume jurisdiction of this case.

2.) Award actual damages to be established at trial pursuant to 15 U.S.C. § 1640(a)(1).

3.) Award statutory damages in the amount of twice the finance charge in accordance to 15 U.S.C. § 1640(a)(2).

4.) Award Plaintiff costs and reasonable attorney's fees in accordance with 15 U.S.C. § 1640.

5.) Cost of damages associated with loss of the trade-in to be established at trial.

6.) Actual damages for fraud.

7.) Consequential damages resulting from the Defendant's breach of express warranties to be established at trial.

8.) Consequential damages resulting from the Defendant's breach of contract to be established at trial.

9.) Statutory damages and attorney's fees pursuant to section 520.12(2) Florida Statutes multiplied by an appropriate contingency fee lode star multiplier.

10.) Declaring the Defendants acts and practices to be violations of the Motor Vehicle Retail Sales Finance Act, Truth in Lending Act, Equal Credit Opportunity Act and entering an order permanently enjoining said acts and practices in the future.

11.) Consequential damages resulting from the Defendant's misrepresentation.

12.) Awarding the Plaintiff costs and attorney's fees multiplied by an appropriate lodestar.

13.) Awarding the Plaintiff actual damages and punitive damages for the Defendants violations of the Equal Credit Opportunity Act as determined by the trier of fact.

14.) Awarding the Plaintiff costs and attorney's fees pursuant to 15 U.S.C. §1691e(1)(d).

15.) Any other relief allowed by law or deemed appropriate within the discretion of the Court.

Plaintiff gives notice of his demand for trial by jury.

Respectfully submitted this 5th day of March, 2007.

David H Abrams
Attorney for the Plaintiffs
Florida Bar No.: 0692484
108 W. 5th Avenue
Tallahassee, Florida 32303
(850) 224-7653 Phone
(850) 222-0206 Fax

BUYERS ORDER

Date: 07/21/2006

Customer #: 515150

Stock #: 16083

**ALL AMERICAN FORD**
243 N. Magnolia Drive
TALLAHASSEE, FLORIDA 32301
Telephone (850) 877-1171
www.tallahasseeford.com

FORD FORD

SALESPERSON(s): KEITH B PARTRIDGE

| Buyer(s) | DL # | Date of Birth | Social Security #/Tax ID No. |
|---|---|---|---|
| MARCUS WINSLOW HOLTON | H435559644430 | 12/03/1964 | |
| | DL # | Date of Birth | Social Security #/Tax ID No. |

| Address | Home Phone | Business Phone |
|---|---|---|
| 8381 INNSBRUOK DR | (850)668-2531 | (850)575-8655 |
| City / State / Zip: TALLAHASSEE FL 323124242 | Cell Phone | Fax Number |

| Vehicle Purchased VIN# | Make | Model | Year | Color/Trim | Mileage |
|---|---|---|---|---|---|
| 1FMPU15596LA16083 | FORD TRU | EXPEDITI | 2006 | REDFI /MED FLINT | 4402 |

Email Address

☐ NEW VEHICLE XX DEMONSTRATOR

The only warranty applying to this vehicle is the LIMITED WARRANTY provided by the manufacturer and its applicability shall be determined solely by the terms and conditions of such manufacturer's warranty. The Purchaser hereby acknowledges that Seller has made available "Warranty Pre-Sale Information" as disclosed in the warranty binders pursuant to the Magnuson-Moss Warranty Federal Trade Commission Improvement Act.

Customer Initials: ____________

☐ USED VEHICLE

The information you see on the Buyer's Guide for this vehicle is part of this contract. Information in the Buyer's Guide overrides any contrary provisions in the contract of sale.

____ If this line is checked, the subject vehicle has been previously titled or registered as a short-term lease vehicle as defined in Florida Statute 319.14.

**USED VEHICLE TRADE-IN UNIT #1**

Year: 1999 Make: FORD TRUCK Model: EXPEDITION

Odometer Mileage: 205404 Color: GREEN

VIN: 1FMRU1768XLB38093

Payoff Owed To: Amount: Initial If An Estimate:

Payoff Address:

Spoke To: Person Who Called

Date Payoff is Good Until Per Diem

**USED VEHICLE TRADE-IN UNIT #2**

Year: Make: Model:

Odometer Mileage: Color:

VIN:

Payoff Owed To: Amount: Initial If An Estimate:

Payoff Address:

Spoke To: Person Who Called

Date Payoff is Good Until Per Diem

| Item | Amount |
|---|---|
| SELLING PRICE | 33897.98 |
| ELECTRONIC FILING FEE | 17.00 |
| TOTAL PRICE INCLUDING ACCESSORIES | 33914.98 |
| TRADE-IN ALLOWANCE | 1000.00 |
| CASH DIFFERENCE | 32914.98 |
| EXTENDED SERVICE/MAINT. AGREEMENT | 1710.00 |
| DEALERSHIP SERVICES - THIS CHARGE REPRESENTS COSTS AND PROFITS TO THE DEALERSHIP FOR ITEMS SUCH AS INSPECTING, CLEANING AND ADJUSTING NEW AND USED VEHICLES AND PREPARING DOCUMENTS RELATING TO THE SALE. | $ 789.88 |
| FLORIDA WASTE TIRE/BATTERY FEE | 6.50 |
| AMOUNT TAXABLE | 35421.36 |
| ELECTRONIC FILING FEE/TAG AGENCY | |
| SALES TAX (INCL. DISC. CNTY. TAX IF ANY) | 2225.94 |
| LUXURY TAX (IF ANY) | |
| EST. TITLE & FEES | 252.00 |
| TRADE-IN/LEASE BALANCE OWED | |
| TOTAL BALANCE DUE | 37899.30 |
| DEPOSIT | |
| FACTORY REBATES (IF ANY) | 6000.00 |
| AMOUNT OF CASHIER'S CHECK/CASH DUE ON DELIVERY | |
| AMOUNT TO BE FINANCED (OR) UNPAID BALANCE OF CASH PRICE | 31899.30 |

This written Buyer's order, and any documents incorporated by reference constitutes the entire agreement between Purchaser and the Dealership. Any oral statements or representations of the dealership relating to the quality or condition of the vehicle are null and void unless reduced to writing and made a part of the Buyer's order. It is expressly understood and agreed to by and between the parties herein that this is an offer to purchase by the Purchaser, and is not an offer to sell by the Dealership and further, that this offer to purchase does not become a binding contract on the parties hereto until accepted in writing by an authorized officer of the Dealership. **I HAVE READ AND AGREE TO THE ADDITIONAL TERMS AND CONDITIONS ON THE REVERSE SIDE HEREOF.**

Purchaser 1 [signature] Date 07/21/2006

Purchaser 2 ____________ Date ____________

Seller/Dealership ____________ Date 07/21/2006

PSM 80 (10/03) Reynolds and Reynolds

**Exhibit A**



1. THE DEALER/SELLER MAKES NO WARRANTIES, EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE WITH RESPECT TO THE VEHICLE DESCRIBED ON THIS BUYERS ORDER AND THE DEALER/SELLER EXPRESSLY DISCLAIMS ANY SUCH WARRANTIES, EXCEPT AS MAY OTHERWISE BE SPECIFICALLY PROVIDED IN WRITING IN A SEPARATE WRITING FURNISHED TO BUYER BY DEALER/SELLER.

2. The Dealership has acquired the vehicle being offered for sale from the manufacturer or a previous owner. We do not guarantee that this vehicle has not incurred minor or major damage prior to our acquisition of the unit.

3. If credit is to be extended with this sale, disclosure of terms is made by separate document that becomes part of this transaction.

4. Dispute Resolution Agreement/Waiver of Jury Trial and Bench Trial: The undersigned customer and dealer agree that any and all claims or disputes involving the customer and dealer, it's officers, agents, employees or surety shall be resolved in accordance with the following provisions: MANDATORY MEDIATION: All claims, or disputes arising between the customer and the dealer, it's officers, agents, employees or surety concerning any claim or controversy arising out of or related to the purchase of the vehicle described on the face hereof, shall first be submitted to mediation pursuant to the Commercial Mediation Rules of the American Arbitration Association, prior to any party seeking recourse to arbitration. The parties may agree to a mediator of their own choosing, and if unable to agree on a mediator, a request for mediation shall be made to the American Arbitration Association. The parties agree that in the event the parties are unable to resolve the claims, or disputes concerning any matter through mediation, they will thereafter submit said claims to arbitration. MANDATORY ARBITRATION: Dealer and customer agree to submit for arbitration, pursuant to the Commercial Arbitration Rules of the American Arbitration Association, any controversy or claim arising out of or relating to this Agreement and any controversy or claim of any nature whatsoever arising out of the purchase by buyer of the vehicle described on the face of this Buyers Order and judgment on any award rendered at the conclusion of said Arbitration may be enforced in any Court having jurisdiction thereof. The arbitrator may award injunctive relief only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim. You and dealer agree that YOU AND DEALER MAY BRING CLAIMS AGAINST THE OTHER ONLY IN YOUR OR ITS INDIVIDUAL CAPACITY, and not as a plaintiff or class member in any purported class or representative proceeding. Further, you agree that the arbitrator may not consolidate proceedings or more than one person's claims and may not preside over any form of a class proceeding, and that if this specific proviso is found to be unenforceable, then the entirety of this arbitration clause shall be null and void. Arbitration pursuant to the Agreement is not intended to deprive the parties of rights, provided for by Chapter 681 of the Florida Statutes, known as the "Lemon Law". Customer may require that disputes eligible for arbitration by the Florida New Motor Vehicle Warranty Board, pursuant to Chapter 681 of the Florida Statutes, be submitted to such Board for arbitration. The Arbitrator(s) rather than a court will decide arbitrability, i.e., whether a particular merit-related dispute is arbitrable. By signing below, customer and dealer WAIVE TRIAL BY JURY AND BENCH TRIAL and acknowledge that they have knowingly and intentionally waived this right. VENUE of any mediation or arbitration will be in the county in which the dealership is located and governed by the laws of the State of Florida. Notwithstanding anything to the contrary herein, both customer and dealer agree that a claim under §68.055 of the Florida Statutes relating to worthless checks, is not governed by this Agreement and any party may bring such claim in a court of law.

5. LIEN PAY-OFF AGREEMENT: The amount shown on the face hereof as trade-in balance owed is an estimated payoff only and includes only the figure stated. The terms and conditions of the Title Payoff and Guarantee agreement are incorporated by reference.

6. SUBJECT TO FINANCE APPROVAL: The terms and conditions of the Bailment Agreement For Vehicle Spot Delivery are incorporated by reference.

# Exhibit B

8510006873 ©2005, Moore Wallace All rights reserved. - 0305

## FLORIDA SIMPLE INTEREST VEHICLE RETAIL INSTALLMENT CONTRACT

DATE 07/21/2006

1-800-727-7000




www.fordcredit.com

**Buyer (and Co-Buyer) Name and Address (Including County and Zip Code)**
MARCUS HOLTON
8381 INNSBROOK DR
TALLAHASSEE FL 323124242 LEON

DEC
Month of Birth

**SELLER/CREDITOR (Seller Name and Address)**
ALL AMERICAN FORD
243 N. MAGNOLIA DRIVE
TALLAHASSEE FL 32301

You, the Buyer (and Co-Buyer, if any), may buy the vehicle described below for cash or on credit. The cash price is shown below as "Cash Price." The credit price is shown below as "Total Sale Price." By signing this contract, you choose to buy the vehicle on credit under the agreements on the front and back of this contract.

| New/Used | Mileage | Year and Make | Model | Vehicle Identification Number | Use For Which Purchased |
|---|---|---|---|---|---|
| NEW | 44 | 2006 FORD TRUCK | EXPEDITION | 1FMPU15596LA16083 | ☒ Personal ☐ Agricultural ☐ Commercial |

Trade-In 1999 FORD TRUCK EXPEDITION $ 1000.00 $ N/A
Year and Make / Gross Allowance / Amount Owing

1. Cash Price ............ $ 32616.90 (1)
2. Down Payment
   - (a) Third Party Rebate Assigned to Creditor ............ $ 6000.00
   - (b) Cash Paid ............ $ N/A
   - (c) ............ $ N/A
   - (d) Cash Down Payment [Items 2(a) plus 2(b) plus 2(c)] ............ $ 6000.00
   - (e) Trade-In (description above) ............ $ 1000.00
   - Total Down Payment [Items 2(d) plus 2(e)] ............ $ 7000.00 (2)
3. Unpaid Balance of Cash Price (1 minus 2) ............ $ 25616.90 (3)
4. Amounts paid on your behalf (Seller may be retaining a portion of these amounts)
   To Public Officials
   - (i) for license, title & registration fees $ N/A
   - (ii) for official fees $ N/A
   - (iii) for documentary stamps $ 96.60
   - (iv) for taxes (not in Cash Price) $ 128.25 ............ $ 224.85

   To Insurance Companies for:
   - Credit Life Insurance ............ $ N/A
   - Credit Disability Insurance ............ $ N/A
   - N/A ............ $ N/A
   - N/A ............ $ N/A

   - To ULTIMATE CHOICE for SERVICE AGMT $ 1406.00
   - To ULTIMATE CHOICE for MAINT AGMT $ 304.00
   - To ______ for ______ $ N/A
   - To ______ for ______ $ N/A
   - To ______ for ______ $ N/A
   - To ______ for ______ $ N/A
   - Total ............ $ 1934.85 (4)
5. Amount Financed (3 plus 4) ............ $ 27551.75 (5)

**YOU ARE REQUIRED TO INSURE THE VEHICLE. YOU MAY OBTAIN VEHICLE INSURANCE FROM A PERSON OF YOUR CHOICE. LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED. CREDIT LIFE, CREDIT DISABILITY AND OTHER OPTIONAL INSURANCE ARE NOT REQUIRED TO OBTAIN CREDIT AND WILL NOT BE PROVIDED UNLESS YOU SIGN AND AGREE TO PAY THE PREMIUM.**

1. Buyer understands that he has the option of assigning any other policy or policies Buyer owns or may procure for the purpose of covering this retail instalment sale and the policy need not be purchased from the Creditor in order to obtain credit.

   Buyer Signs ______

   Co-Buyer Signs ______

2. Buyer understands that the credit life coverage may be deferred if, at the time of application, Buyer is unable to engage in employment or unable to perform normal activities of a person of like age and sex, if the proposed credit life insurance policy contains this restriction.

   Buyer Signs ______

   Co-Buyer Signs ______

3. Buyer understands that the benefits under the policy will terminate when Buyer reaches a certain age and that Buyer's age is accurately represented on the application or policy.

   Buyer Signs ______

   Co-Buyer Signs ______

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | Amount Financed | Total of Payments | Total Sale Price |
|---|---|---|---|---|
| The cost of your credit as a yearly rate | The dollar amount the credit will cost you | The amount of credit provided to you or on your behalf | The amount you will have paid when you have made all scheduled payments | The total cost of your purchase on credit, including your downpayment |

Credit Life Insurance Company
$ Premium Term
You want Credit Life Insurance

| % | $ | $ | $ | $ |
|---|---|---|---|---|
| 15.85 | 15576.25 | 27551.75 | 43128.00 | ~~50128.00~~ |

Your Payment Schedule Will Be:

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 71 | 599.00 | Monthly Beginning 05/07/2006 |
| 1 | 599.00 | 04/07/2012 |

**Prepayment:** If you pay off your debt early, you will not have to pay a penalty.

**Security Interest:** You are giving a security interest in the vehicle being purchased.

**Late Payment:** You must pay a late charge on the portion of each payment received more than 10 days late. The charge is 5 percent of the late amount.

**Contract:** Please see this contract for additional information on security interest, nonpayment, default, the right to require repayment of your debt in full before the scheduled date, and prepayment penalty.

☐ Your last installment payment under this contract is a balloon payment.

**EXCESS WEAR, USE AND MILEAGE CHARGES**

If the box directly above is checked, this section, Paragraph B, and Paragraph C of this contract apply. You may be charged for excessive wear based upon our standards for normal use. If you exercise the option to sell the vehicle back to Creditor under Paragraph B, you must pay the Creditor $0. N/A per mile for each mile in excess of N/A miles shown on the odometer.

Any change in this contract must be in writing and signed by you and the Creditor.

Buyer Signs X ______________________

Co-Buyer Signs X ______________________

**YOU ACKNOWLEDGE THAT YOU HAVE READ AND AGREE TO BE BOUND BY THE ARBITRATION PROVISION ON THE REVERSE SIDE OF THIS CONTRACT.**

**The Annual Percentage Rate may be negotiated with the Seller. The Seller may assign this contract and may retain its right to receive a portion of the Finance Charge.**

Buyer Signs X

Co-Buyer Signs

Credit Disability

Insurance Company

$ N/A

Premium Insured(s)

You want Credit Disability Insurance:

Buyer Signs

Co-Buyer Signs

OTHER OPTIONAL INSURANCE

Buyer Signs

Co-Buyer Signs

**Credit Life and Credit Disability insurance are for the term of the contract. The amount and coverages are shown in a notice or agreement given to you today.**

☐ **Debt Cancellation Waiver Addendum (Optional)** If this box is checked you have purchased a debt cancellation waiver. Purchase of this coverage is optional and is not required to obtain credit. The terms and conditions of the debt cancellation waiver are set forth in the attached Addendum which is incorporated into this contract. The price for the debt cancellation waiver is set forth on this contract in the Itemization of Amount Financed under section 4.

Buyer Signs ______________________

**Do not sign this contract before you read it or if it contains any blank spaces. You are entitled to an exact copy of the contract you sign. Keep it to protect your legal rights.**

**Buyer (and Co-Buyer) acknowledge that (i) before signing this contract, Buyer (and Co-Buyer) received and reviewed a true and completely filled in copy of this contract and (ii) at the time of signing this contract, Buyer (and Co-Buyer) received a true and completely filled in copy of this contract.**

Buyer Signs X ______________________ Co-Buyer Signs X ______________________

Seller ALL AMERICAN FORD By X Title

THIS CONTRACT IS NOT VALID UNTIL YOU AND SELLER SIGN IT.

ASSIGNMENT

Seller may transfer this contract to another person. That person will then have all Seller's rights, privileges, and remedies. By signing below, the Seller assigns this contract to FORD MOTOR CREDIT COMPANY ("Assignee"). To contact Assignee about this contract, call ____________, or visit their website at ____________.

Seller ALL AMERICAN FORD By X Title

FC 17609-SI (OCT 05) (Previous editions may NOT be used.)
FC 17609-B-SI

SEE OTHER SIDE FOR ADDITIONAL AGREEMENTS

ORIGINAL

# ALL AMERICAN FORD

243 N Magnolia Drive Tallahassee, Florida 32301 850-877-1171

## BAILMENT AGREEMENT AND RELEASE

I MARCUS WINSLOW HOLTON am in the process of purchasing or leasing the following described vehicle from All American Ford: Year 2006 Make FORD TRUCK Serial No. 1FMPU15596LA16083. In connection with this transaction, I have entered into an installment contract or lease agreement and understand that it will be assigned to a financial institution upon All American Ford receiving approval of my credit on this transaction. I request that All American Ford grant me possession of the vehicle and to consider the transaction finalized subject to my credit check being approved and by my signature below do hereby affirm that all of the credit data supplied by me is true and correct. I acknowledge receipt of the subject vehicle and agree that if credit approval is not received within a time satisfactory to All American Ford, I will return said vehicle to All American Ford in such condition as it was accepted within 24 hours of receiving notice that my credit has not been approved. Such notice shall be referred to as "return notice."

"Return notice" shall be considered to have been received upon the earlier of the following events: (1) my acknowledgement of receipt of the return notice, (2) 48 hours after mailing to me of a mailing setting forth the return notice, (3) 24 hours after I have received by delivery, a writing setting forth the return notice, and it is understood that I shall be deemed to have received such writing if same is posted on the front door at my address of record.

In the event that I fail to return the vehicle in the promised condition or at the time as promised, I hereby agree that All American Ford may repossess/recover such vehicle using any means whatsoever and I hereby waive any form of legal process for same, it being acknowledged that I will at that point not have provided an adequate means of payment of the consideration as promised for the vehicle. In such event I agree that I shall be liable for all costs of such repossession/recovery, $100.00 for each day I have had possession of such vehicle, any and all costs to retore the vehicle to the promised condition, legal fees and related costs.

**I further waive any claim I might have against All American Ford, its employees and any third parties with whom All American Ford has contracted in connection with such recovery/repossession, and hereby release and agree to hold All American Ford and such parties harmless against any claim for damages by me or other parties in connection with the recovery/repossession, including damage for the loss of any articles, if any, in the vehicle at the time of recovery/repossession.**

MARCUS WINSLOW HOLTON
CUSTOMER NAME

[signature]
CUSTOMER SIGNATURE

8301 INNSBROOK DR
ADDRESS
TALLAHASSEE FL 323124242

07/21/2006
DATE

Reynolds and Reynolds FL602229 O (04/04)

Exhibit C